UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BREANNA MOOREHEAD<br>211 Center Street<br>Springdale, PA 15144<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>SAY IT ONCE DOG TRAINING, LLC<br>168 Westbrook Road<br>New Kensington, PA 15068<br><br>And<br><br>VINCENT SOMMA<br>individually and in his capacity as owner<br>of Say It Once Dog Training, LLC<br>168 Westbrook Road<br>New Kensington, PA 15068<br><br>　　　　Defendants | 2:23-cv-2011<br><br>JURY DEMANDED |

## CIVIL ACTION COMPLAINT

**I. Parties and Reasons for Jurisdiction.**

　　1.　　Plaintiff, BREANNA MOOREHEAD (hereinafter "Plaintiff") is an adult individual residing at the above address.

　　2.　　Defendant, SAY IT ONCE DOG TRAINING, LLC (hereinafter "SIODT") is a business corporation organized by and operating under the laws of the Commonwealth of Pennsylvania, and having a principal place of business at the above captioned address. Defendant SIODT is a citizen of Pennsylvania.

3. Defendant, VINCENT SOMMA (hereinafter "Somma") is an adult individual residing or doing business at the above captioned address and is the President, CEO, and owner of co-Defendant SIODT

4. At all times material hereto, Defendants were acting together, in concert, by and on each other's behalf.  At all times material hereto, Defendants were Plaintiff's employer(s).

5. Defendants SIODT and Somma are hereinafter collectively referred to as Defendants.

6. Plaintiff has exhausted her administrative remedies pursuant to the Equal Employment Opportunity Act and the Pennsylvania Human Relations Act.  (See Exhibit A, true and correct copies of two "right-to-sue" letters issued by the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission).

7. This action is instituted for violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000 et seq.)  Plaintiff was constructively terminated, subjected to a sexually hostile work environment and subjected to retaliation after complaining of sexual harassment.

8. Jurisdiction is conferred by 28 U.S.C. §1331 and §1343.

9. Supplemental jurisdiction over the Plaintiff's state law claims is conferred pursuant to 28 U.S.C. §1367.

10. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district, because Defendants conduct business in this district, and because a substantial part of the acts, conduct and/or omissions giving rise to the claim set forth herein occurred in this judicial district.  Plaintiff was working in the Western District of Pennsylvania at the time of the illegal conduct by Defendants, as set forth herein.

**II.  Operative Facts.**

11. On or about October 26, 2019, Defendant Somma, owner of Say It Once Dog Training, LLC met Plaintiff when he was scheduled to provide in-home training for Plaintiff's puppy

12. Following this meeting, Defendant Somma contacted Plaintiff on social media in a casual, friendly manner.

13. During this time, Plaintiff became very interested in pursuing dog training as a future career, and began working on a degree in Pre-Veterinary Biology and Animal Behavior.

14. On or about January 21, 2021, Defendant Somma began to contact Plaintiff with flirtatious comments on both Instagram and Snapchat.

15. In February of 2021, Plaintiff asked Defendant Somma if she would be allowed to shadow a training session, as she was interested in pursuing dog training; Defendant Somma offered her a job with Defendants, and Plaintiff agreed.

16. Plaintiff began to shadow Defendants' trainers during their sessions for several months, including but not limited to Defendant Somma, Anthony Manning, Rachel Balko, Michelle McGraw, and Erin O'Toole.

17. On or about July 2, 2021, Defendant Somma requested that Plaintiff model the company's branded V-neck shirts, stating that Plaintiff would "fill the shirts out better than he would."

18. In or around August of 2021, Plaintiff began to conduct individual in-home training sessions for Defendants on her own.

19. In or around January of 2022, Defendant Somma, Plaintiff and several other employees of Defendants, including two new hires by the name of Cassidy Parker and Emma (Last Name Unknown) attended a training seminar in North Carolina.

20. Following this trip, Defendant Somma requested Plaintiff's help in learning to ride horses at his parents' barn, as Plaintiff has previous experience with horses; Plaintiff agreed and she provided several training sessions.

21. On or about September 16, 2022, Plaintiff and Defendant Somma, and several of Defendants' employees attended another dog training seminar in North Carolina, during which Defendants' employees were sharing an AirBnB near the seminar's location.

22. On September 17, 2022, when the seminar was over for the day, Plaintiff and Defendants' other employees attended a dinner at a Mexican restaurant, where Plaintiff consumed approximately two (2) drinks and became intoxicated.

23. Upon arriving back at the AirBnB, Plaintiff went into the kitchen, followed by Defendant Somma who proceeded to grab her waist; Plaintiff was taken aback and brushed it off.

24. Following this, Plaintiff, Defendant Somma, and the other employees were sitting on the couch watching T.V. when Defendant Somma asked Plaintiff to give him a massage.

25. Plaintiff agreed, as Ms. Sara Holsing, one of Defendants' new trainers who was in attendance at this trip, had also been asked to and had given Mr. Somma a massage earlier.

26. Defendant Somma then stated that the massage should happen "after everyone else has gone to bed."

27. Defendant Somma brought over blankets for everyone and requested that Plaintiff move closer to him; Plaintiff stated she thought it was a bad idea, but eventually agreed.

28. Defendant Somma then immediately placed one of his hands on Plaintiff's thigh under the blanket and attempted to place his other hand down Plaintiff's pants.

29. At this time, Plaintiff was still visibly intoxicated.

30. Plaintiff abruptly moved away from Defendant Somma so that he would no longer be able to touch her.

31. Defendant Somma then sent Plaintiff sexually explicit Snapchat messages to which Plaintiff was responding that it was a really bad idea for this to continue.

32. Defendant Somma sent Plaintiff a message stating that "nothing would change" between them if they agreed to engage in sexual activity.

33. By this time, Plaintiff, who was still intoxicated, had gone into her room to get ready for bed, where she became upset and unsure how to handle the situation.

34. Defendant Somma entered Plaintiff's room, and Plaintiff told Defendant Somma that she did not want sex.

35. After attempting to kiss Plaintiff several times and being pushed away, Defendant Somma then engaged in a coercive unwanted sexual act with Plaintiff, but without Plaintiff's consent and in spite of Plaintiff being intoxicated, and after Plaintiff had explicitly told Defendant Somma previously she did not wish to engage with him in this manner.

36. The following day, Defendant Somma again coerced Plaintiff into engaging in a sexual act with him, after which Plaintiff contacted her cousin and debating leaving the seminar and quitting her job.

37. Defendant Somma pestered Plaintiff into engaging in a sexual act a third time on the drive home from the seminar.

38. Following this situation, Defendant Somma and Plaintiff engaged in sexual acts several more times, although Plaintiff attempted to tell Defendant Somma each time that she believed it was wrong and that it should not continue.

39. On or about October 19, 2022, Plaintiff confided in another of Defendants' trainers, Travis Smith, that she was in a bad situation and did not know what to do; Mr. Travis asked if she was having sexual relations with Defendant Somma.

40. Plaintiff said she was afraid she would lose her job, to which Mr. Travis stated that he believed Defendant Somma sexually assaulted Plaintiff.

41. However, then Mr. Travis requested nude photos from Plaintiff and joked about holding that information over her head; Plaintiff refused Mr. Travis's request.

42. On or about October 24, 2022 and October 31, 2022, Plaintiff was again coerced into performing sexual acts with Defendant Somma, despite Plaintiff telling him she did not want to engage and was uncomfortable doing so.

43. On November 16, 2022, Ms. Moorehead was at Mr. Somma's family barn for horse training, and Mr. Somma noticed Ms. Moorehead appeared nervous; Ms. Moorehead stated she was anxious being around Mr. Somma because she knew "what typically followed", meaning that Mr. Somma would engage her in sex.

44. Even despite this conversation, Defendant Somma then engaged in sex with Plaintiff.

45. On November 30, 2022, Plaintiff had a meeting with Defendants' event organizer, Kimmi Rasky, during which Ms. Rasky asked Plaintiff "if anything was going on" between Plaintiff and Defendant Somma.

46. Plaintiff explained to Ms. Rasky the specifics of the situation, and became upset and began to cry, stating she didn't know how to end the situation without losing her job, and Plaintiff further stated she was afraid to end things, and that Plaintiff had attempted to several times before without success because Plaintiff didn't have control in the situation.

47. On December 1, 2022, Defendant Somma told Plaintiff that he wished to "end their relationship" and go back to the way things were before; Plaintiff agreed.

48. Plaintiff additionally told Defendant that what he had done made her feel disgusting, that Defendant Somma would never know what it was like to be in her position and that she felt this was Defendant Somma's intention with her from the first time they met when Plaintiff was just eighteen (18) years old; Defendant Somma apologized and promised Plaintiff she would always have a job with Defendants.

49. Immediately following this incident, Plaintiff noted that Defendant Somma's demeanor toward her became hostile:

   a, Defendant Somma told her to "keep her fucking head on" when Plaintiff ordered a drink during a company outing; and

   b, Defendant Somma yelled at Plaintiff during a group class and told her to "use her head and start thinking" even though she was only following Defendant Somma's instructions for the class.

50. On December 19, 2022, Defendant Somma's fiancé, Francesca Eonta, contacted Plaintiff stating that she "knew everything", and sent several threatening and profanity-laden texts to Plaintiff regarding the situation.

51. On December 26, 2022, Defendant Somma terminated Plaintiff's employment stating it was "not in [Plaintiff's] best interest to continue with the company, nor was it in the company's best interest to keep [Plaintiff]."

52. As described above, Defendant Somma utilized his position of power over Plaintiff to coerce and intimidate her into a sexual relationship with him, only to terminate Plaintiff's employment in retaliation after the relationship ended.

7

53. Following her termination, Plaintiff was made aware that Defendant Somma had engaged in similar patterns of coercive sexual encounters with another female employee of Defendants.

54. At all times material hereto, Defendants created and maintained a hostile work environment that Plaintiff was subjected to and required to work in and around.

55. At all times material hereto, Defendants fostered an atmosphere of tolerance for sexual harassment of women, including Plaintiff, within Defendants' place of business.

56. As a direct and proximate result of Defendants' conduct, Plaintiff sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages and earnings, as well as emotional distress, humiliation, pain and suffering, personal injury damages and other damages as set forth below.

**III. Causes of Action.**

### COUNT I
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Hostile Work Environment; 42 U.S.C.A. § 2000 et seq)

57. Plaintiff incorporates paragraphs 1-56 as if fully set forth at length herein.

58. Defendants employed fifteen (15) or more employees from 2021through 2022.

59. As described above, Plaintiff was subjected to unwelcome sexual advances, language, innuendo, physical touching, unwanted sex, statements, and/or other conduct, all by her boss, Defendant Somma, all while being employed by Defendants.

60. The aforementioned actions and conduct were severe, pervasive and continuous, and created a hostile work environment for Plaintiff.

61. Defendants' conduct, as set forth above, violated Title VII of the Civil Right Act of 1964.

62. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages including by not limited to: great economic loss, future lost earning capacity, lost opportunity, lost future wages, loss of front pay and back pay, as well as emotional distress, mental anguish, humiliation, personal injury type damages, pain and suffering, consequential damages, as well as a work loss, loss of opportunity and a permanent diminution of her earning power and capacity, and a claim is made therefore.

## COUNT II
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(Retaliation; 42 U.S.C.A. § 2000 et seq)

63. Plaintiff incorporates paragraphs 1-62 as if fully set forth at length herein.

64. Defendants terminated Plaintiff's employment in retaliation for her complaints and/or opposition to the sexual harassment as described above.

65. Defendants' conduct, as set forth above, violated Title VII of the Civil Rights Act of 1964.

66. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

67. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

68. Pursuant to the Title VII of the Civil Rights Act of 1964, et seq Plaintiff demands attorneys fees and court costs.

## COUNT III
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
### (P.S. §951, et sec)

69. Plaintiff incorporates paragraphs 1-68 as if fully set forth at length herein.

70. At all times material hereto, and pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,, an employer may not discriminate against an employee based sex.

71. Plaintiff is a qualified employee and person within the definition of Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

72. Defendants are "employers" and thereby subject to the strictures of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

73. As described above, Plaintiff, in the course and scope of her employment, was subjected to a sexually harassing and hostile work environment and terminated from employment and retaliated against after making a complaint of sexual harassment.

74. Defendants failed to remedy the sexual harassment despite actual or constructive knowledge.

75. Defendants' conduct constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

76. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as personal injury, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

77. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

78. Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. Plaintiff demands attorneys fees and court costs.

## IV. Relief Requested.

**WHEREFORE,** Plaintiff Breanna Moorehead demands judgment in her favor and against Defendants jointly and severally, in an amount in excess of $150,000.00 together with:

A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

B. Punitive damages;

C. Attorneys fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Court deems just proper and equitable.

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY: _____
 **GRAHAM F. BAIRD, ESQUIRE**
 Two Penn Center
 1500 JFK Boulevard, Suite 1240
 Philadelphia, PA 19102

 Attorney for Plaintiff, Breanna Moorehead

Date: 11/21/2023